891 So.2d 604 (2005)
RESIDENTIAL PLAZA AT BLUE LAGOON, INC., Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 1D03-3793.
District Court of Appeal of Florida, First District.
January 24, 2005.
Paul H. Amundsen and Julia E. Smith of Amundsen & Gilroy, P.A., Tallahassee, for Appellant.
Gregory J. Philo, Chief Appellate Counsel, Agency for Health Care Administration, Tallahassee, for Appellee.
KAHN, J.
In connection with the denial of appellant's relicensing to provide extended congregate care (ECC), we are called upon to construe section 400.407(3)(b)1., Florida Statutes (2002). The Agency for Health Care Administration (AHCA)relied upon a particular construction of this statute when noticing its intent to deny appellant's relicensure and when denying appellant's request for a formal administrative hearing. Specifically, AHCA took the position that section 400.407(3)(b)1. mandated denial of the license renewal. Because AHCA's construction was erroneous, we reverse. See Ocampo v. Dep't of Health, 806 So.2d 633 (Fla. 1st DCA 2002). We also grant appellant's motion for attorney's fees filed under section 120.595(5), Florida Statutes (2002).
Appellant Residential Plaza at Blue Lagoon, Inc. (RPBL) is an assisted living facility (ALF) in Miami-Dade County. RPBL holds the standard ALF license, and also has held an ECC license that allows the licensee to maintain, in a residential environment, residents whose mental or physical limitations might otherwise disqualify them from residing in an ALF. *605 See § 400.402(7), Fla. Stat. (2002). An AHCA survey of RPBL in June 2001 revealed two deficiencies known as Class II deficiencies. First, RPBL's administrator failed to provide documentation that staff members coming in contact with residents had received required infection control training. Second, RPBL's staff members were not using appropriate infection control measures in distributing medication to residents. The AHCA surveyor recommended no sanctions, subject however to RPBL implementing a plan of correction. Shortly afterwards, AHCA noted by a letter that RPBL had in fact corrected the deficiencies by the appropriate date.
In September 2001, AHCA issued an ECC license to RPBL. After another AHCA-conducted survey in December, the Agency sent a letter to RPBL advising that no deficiencies were found and that a "recommendation for renewal ALF/ECC license . . . will be forwarded to Tallahassee." The ECC license would have been due for renewal September 22, 2003.
Then, in August 2002, a little more than a year after AHCA identified, and seemingly disposed of, the Class II deficiencies discussed above, AHCA filed an administrative complaint seeking a $1,000 fine and a $500 survey fee as a sanction for RPBL's failure to produce infection control training documentation during the June 2001 survey. In January 2003, after some inconsequential back and forth between the parties, AHCA denied RPBL's request for a formal hearing and directed RPBL to pay a fine and survey fee totaling $1,500. RPBL did not contest this order and, instead, paid the fine. Next, in July 2003, AHCA forwarded a notice of intent to deny the renewal. AHCA proposed to deny renewal of the ECC license based upon AHCA's conclusion that RPBL failed to meet statutory licensing requirements because of the $1,500 sanction for a "Class II deficiency during the previous two years."
RPBL sought a formal administrative hearing on the denial. AHCA denied the request for formal hearing and dismissed RPBL's petition with prejudice concluding that the petition was incurably defective. At that time, AHCA took the position that denial of the ECC license was mandatory under section 400.407(3)(b)1. On appeal RPBL raises several arguments challenging AHCA's decision to deny renewal of the license and AHCA's subsequent dismissal of RPBL's petition. We resolve this case on RPBL's first argument, that the Agency has misconstrued and misapplied the statute.
The statute here under review provides, in pertinent part:
1. In order for extended congregate care services to be provided in a facility licensed under this part, the agency must first determine that all requirements established in law and rule are met and must specifically designate, on the facility's license, that such services may be provided and whether the designation applies to all or part of a facility. Such designation may be made at the time of initial licensure or relicensure, or upon request in writing by a licensee under this part. Notification of approval or denial of such request shall be made within 90 days after receipt of such request and all necessary documentation. Existing facilities qualifying to provide extended congregate care services must have maintained a standard license and may not have been subject to administrative sanctions during the previous 2 years, or since initial licensure if the facility has been licensed for less than 2 years, for any of the following reasons:
a. A class I or class II violation. . . . *606 § 400.407(3)(b)1., Fla. Stat.(2002) (emphasis added). AHCA interpreted the statute as precluding renewal of an ECC license for any facility sanctioned for a Class I or II violation within the preceding two years. By statute, an ECC license must be renewed every two years. § 400.417(1), Fla. Stat. (2002). AHCA's interpretation, therefore, results in an automatic denial of renewal in each and every instance where an ECC provider has been sanctioned for a Class I or Class II violation.
Such an interpretation is illogical and completely inconsistent with other statutory provisions that specifically address license renewals and sanctions for violations. For instance, section 400.407(3)(b)2. provides for quarterly monitoring surveys of facilities providing ECC services. Under this provision, AHCA may waive one of the quarterly surveys "if, during the inspection, the [surveyor] determines that extended congregate care services are being provided appropriately, and if the facility has no class I or class II violations and no uncorrected class III violations." Under section 400.414(1)(e), AHCA may deny, revoke, or suspend a license in response to a single Class I deficiency, three Class II deficiencies, or five Class III deficiencies cited on a single survey and not timely corrected. Were one Class II violation sufficient to deny a license renewal, or as AHCA puts it, sufficient to require mandatory denial, the Legislature would have had no need to either provide for waiver of surveys in the absence of such a deficiency, or to list in detail the number and types of violations that would constitute grounds for a denial, revocation, or suspension, in the discretion of the Agency.
AHCA's interpretation of section 400.407(3)(b)1. as mandating denial of RPBL's ECC renewal is also patently inconsistent with the language of section 400.417(5), Florida Statutes. That section provides:
A conditional license may be issued to an applicant for license renewal if the applicant fails to meet all standards and requirements for licensure. A conditional license issued under this subsection shall be limited in duration to a specific period of time not to exceed 6 months, as determined by the agency, and shall be accompanied by an agency-approved plan of correction.
§ 400.417(5), Fla. Stat. (2002). A plain reading of the statutory language indicates that an outright denial of a license renewal application is discretionary rather than mandatory.
Acknowledging ACHA's expertise in healthcare administration, we are nonetheless obliged to overturn the Agency's clearly erroneous interpretation of the statute. See Ocampo, 806 So.2d at 634. The statute's reference to denial of licensure to "existing facilities" makes sense only if limited to facilities that maintain a standard ALF license and seek to add an ECC license. The statute admonishes such facilities that, to add the ECC license, they must have a two-year period free of any Class I or Class II violations. As to a facility already holding an ECC license, however, the statute does not speak to mandatory non-renewal.
The conclusions we have reached in this opinion have constrained us to seriously consider, and ultimately grant, RPBL's motion for appellate attorney's fees filed under section 120.595(5), Florida Statutes (2002). That statute allows attorney's fees, not only for frivolous or meritless appeals, but also in situations where "the agency action which precipitated the appeal was a gross abuse of the agency's discretion." § 120.595(5), Fla. Stat. (2002). This is such a case. Appellate counsel for ACHA, who did not handle this matter *607 below, has not responded to any of the substantive arguments raised by RPBL and has merely asked us to remand this case for an informal hearing. As we have implicitly noted in the body of this opinion, we find no justification for the position taken by ACHA in its denial of the ECC license and its dismissal of RPBL's petition. In short, this appeal should have never ensued. As a result of this appeal, the administrative process has been delayed; monies, both public and private, have been expended in a non-essential manner; and the resources of the judicial system have been taxed without purpose. Accordingly, and reiterating the conclusions we have reached in the body of this opinion, we find that the action which precipitated this appeal was a gross abuse of agency discretion and accordingly grant the petition for attorney's fees. ACHA is directed to forward the attorney's fee matter to the Division of Administrative Hearings for further proceedings should the parties be unable to agree on an appropriate fee.
REVERSED and REMANDED for further proceedings.
ERVIN and BARFIELD, JJ., concur.